Filed 6/11/25  Marriage of Riaz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of SHAZIB and SAMREEN RIAZ. | |
| SHAZIB RIAZ,<br><br>Respondent,<br><br>v.<br><br>SAMREEN RIAZ,<br><br>Appellant. | F087849<br><br>(Super. Ct. No. VFL281810)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  David C. Mathias, Judge.

Samreen Riaz, in pro. per., for Appellant.

No appearance for Respondent.

-ooOoo-

Samreen Riaz appeals a judgment in a marital dissolution proceeding adjudicating the character of a residential property and distributing various marital estate assets

between herself and her former husband, Shazib Riaz (Husband). Appellant claims several errors occurred below.

First, she claims the trial court violated her right to due process by conducting the last day of the trial in her absence and deeming the trial concluded. Trial occurred over seven days between May 2023 and February 2024. Appellant failed to appear for trial on three of the last four court sessions, including February 16, 2024, when the trial ended. Rather than striking her pleadings as a sanction for her non-appearance, the court deemed the trial concluded and took the matter under submission with evidence submitted during earlier sessions. She also claims the court exhibited judicial bias against her in various rulings, in violation of her due process rights.

Next, she claims the trial court erred in its characterization of the residential property. The parties purchased the home during their marriage. The grant deed from the prior owners conveyed the home to appellant as her sole, separate property. At the same time, Husband executed a quitclaim deed conveying any interest in the home to appellant as her sole, separate property. At trial, Husband testified he signed the deed so they could get a mortgage to fund the purchase and they did not intend to affect a transmutation. The trial court agreed.

Finally, she claims the trial court erred with respect to a business in which Husband purportedly held an interest during the marriage, a watch collection owned by Husband during the marriage, and various community debts. We disagree with these claims of trial court error and affirm the judgment.

**FACTS**

*Background*

The parties married in 2005, separated in November 2019, and a judgment of dissolution was entered on July 20, 2022. The trial court listed the reserved issues related to the marital estate's division as the "residential property, vehicles, loan from a third

2.

party, household furnishings, loan to a third party [Zaid], watch business, alleged business with a third party, retirement, debts and taxes."

The court's minute order from an October 20, 2022 hearing shows the parties stipulated that "the [third party] Zaid loan for $50,000.00 is community property." The court instructed (1) the parties to provide "[a]ll documents related to ownership and payments related to the home" and "any credit card statements that are pre-separation," (2) appellant to provide "documents regarding status of foreclosure on [the] home," any information regarding various retirement accounts, and "documents regarding community tax debt paid by [appellant]," and (3) Husband to "provide documents showing ownership interest in Odessa," "a list of watches … owned at the time of separation," and his "2021 tax return."

*Trial*

    *1. May 4, 2023*

Trial was held over seven days between May 4, 2023, and February 16, 2024. The May 4 reporter's transcript shows the parties agreed to proceed one-by-one through various marital assets and debts. After the parties were unable to agree on various issues, the court swore the parties and received testimony. Appellant stipulated to various amounts of credit card debt. The court also retained jurisdiction over other issues such as obligations related to solar panels on the family home.

The court received testimony about the value of two vehicles owned by the couple. Husband testified that one vehicle was worth $12,172; appellant testified it was worth $8,000. The court listed the value in a range from $9,000 to $11,000. Appellant testified that the other vehicle was worth $5,000. The court explained that when it makes its determination, it would "allocate the cars, as appropriate."

The court received testimony regarding the couple's home. The court noted a September 2, 2015 grant deed conveying the property to appellant "as her sole and separate property" and a September 2, 2015 quitclaim deed conveying Husband's interest

3.

in the property to appellant. Husband asserted he had an interest in the property and testified that he executed the quitclaim deed to facilitate acquiring a purchase mortgage because he had bad credit, and the couple could not obtain a loan if Husband was on title. The court observed that the fact the deeds were recorded on the same day "would indicate that it was part and parcel of the purchase, the transfer of any community property issue …. I'll note it was a quit claim deed and not an interspousal transfer deed, which has some legal difference."

Husband testified that the house was purchased during the marriage using appellant and Husband's funds. Husband testified he contributed funds toward the down payment from money borrowed from his family and the proceeds from selling a vehicle that was his separate property. He also testified that he contributed to the monthly mortgage payments with his own income. Husband represented that he could obtain the closing statement showing the total down payment and other documents related to the purchase of the house, including a "gift letter" from Husband's sister contributing $15,000 towards the home's purchase. The court instructed Husband to file the documents under a declaration.

Appellant countered that Husband signed the quitclaim deed. She claimed she bought the house under her name and the down payment and monthly mortgage payments came from her salary. When asked by the court why they chose to buy a house during the marriage as her separate property, appellant replied, "I pay all the bills, so I wanted to have a security that it should be my house, at least I can provide my kids a safe place to live, in any circumstance."

Remarking on their testimony, the court stated, "[Y]ou're both sitting here in my courtroom, under oath. You … raise[d] your right hand, swore to tell the truth, and now you're telling me completely different historical events, that you both seem fairly certain …." In reserving the issue of the house, the court noted that "[i]f there's no evidence [of the intent to keep the house as community property] and the only document

is the quit claim deed, it will be wife's separate property. If there's sufficient evidence that it was actually the intention of the parties to maintain it as community, despite how it was titled, then the presumption is that it should be community property." Finally, the parties disputed whether the mortgage was currently in default, and the house at risk of foreclosure, or if the loan was current.

The court received testimony regarding debt to the Internal Revenue Service. The court reserved the issue because of conflicting testimony and an absence of evidence regarding when the debt was paid and the amount owed at the time of separation.

The court received testimony about a collection of watches in Husband's possession. Husband submitted an inventory to the court valuing the collection at $11,070. Appellant claimed that Husband testified at a prior hearing that the inventory totaled about $20,000 to $25,000. However, after some discussion, the court stated it was prepared to value the collection at $11,070 and divide the value between the parties. Appellant replied, "That's fine." When the court reiterated its intent to divide that amount unless appellant presented different evidence to persuade the court, appellant replied, "That's fine."

### 2. August 10, 2023

On August 10, 2023, both parties testified regarding the residence. Although a court reporter we present, we lack a reporter's transcript of these proceedings. The court marked Husband's exhibit, which the court's minute order described as "[d]ocuments related to the house (6 pages)." The court received testimony regarding "the loan payments and value of vehicles" before continuing the trial.

### 3. September 15, 2023

On September 15, 2023, trial continued. A court reporter was present, but again, we lack a reporter's transcript of these proceedings. The court noted that "neither party filed any further documents regarding the house." The court received testimony regarding "retirement accounts and Odessa." The court continued the trial again, noting

5.

it would "allow parties to file any further documents and any points and authorities related to the issues of the house, Odessa and retirement accounts, 10 days prior to the next hearing." Trial was continued to December 1, 2023.

### 4. December 1, 2023

One day before the continued December 1 trial date, appellant filed an ex parte application requesting a continuance of the trial. Appellant explained that she was suffering from "unexpected fever or flu-like symptoms and needs time to recover."

The December 1, 2023 minute order from the trial reflected (1) Husband was the only party present; (2) the court raised appellant's written request for continuance; (3) the court heard Husband's statements; and (4) the court ordered "Trial setting is set for December 12, 2023" and set an order to show cause "why the Court should not proceed to make Orders in [appellant's] absence" for the same date.

### 5. December 12, 2023

On December 12, 2023, both parties appeared by video conference for the trial setting conference and other pending matters. Appellant furnished a reporter's transcript for this hearing. Husband represented to the court that a notice of default and election to sell the home was filed with the county on September 11, 2023, due to unpaid mortgage payments. Husband also represented he could procure the funds to pay off the past-due payments and requested authorization to do so on behalf of the marital estate. Appellant disagreed, arguing that (1) Husband lacked any interest in the home as it was appellant's separate property, and (2) the home was not in foreclosure.

The court concluded that it would authorize Husband to communicate with the lender to ensure that the house was not foreclosed upon, and that the court's intent was to preserve the home as an asset pending the adjudication of its character as community or separate property.

When appellant raised the issue of the house's characterization again, the court noted that "[w]e've had at least three trial dates with that issue. It's been up, once again.

6.

You have to appear at trial, and I'll issue a ruling on that issue." Appellant began to speak over the court and would not listen to the court's directive to stop talking despite multiple directives from the court that she "stop" talking. The court noted that appellant spoke over the court and was "extremely disrespectful to the Court, as far as continuing to talk." Due to appellant's behavior, the court required her to personally appear in the courtroom at the next trial date "absent extraordinary circumstances."

On December 15, 2023, the court issued written findings and order after hearing authorizing Husband to communicate with the bank regarding the loan and make any necessary payments to ensure foreclosure does not take place. The order confirmed the trial had been continued to January 24, 2024—a date to which appellant had agreed.

### 6. Interim Motions

On January 9, 2024, appellant filed a combined motion to set aside the December 12, 2023 ruling under Federal Rules of Civil Procedure, rule 60 and "MOTION TO DIVIDE COMMUNAL PROPERTY" relating to Odessa LLC, apparently a business acquired during marriage which owned a percentage of a Wienerschnitzel franchise in Odessa, Texas. Appellant included an exhibit list at the end of the combined motions, but no exhibits are attached to the version in our record, nor does it appear appellant filed any declaration laying the foundation for the documents listed in the exhibit list.

On January 22, 2024, appellant requested an ex parte continuance of the trial to February 23 due to the court clerk's rejection of various filings and unspecified documentary evidence (identified as Exhibits A-H) appellant had attempted to file. In addition, appellant asserted that she had "to attend another deposition or obligation on Jan 24 24" without providing any details.

### 7. January 24, 2024

At the continued trial date of January 24, 2024, husband was present, but appellant failed to appear. A court reporter was present, but no transcript has been provided. The minute order states Husband read an "email received from [appellant]" into the record,

but the e-mail is not part of the record. The court continued the trial to February 16, 2024, and continued all discovery motions and other trial issues. The court's written order to show cause directed appellant to appear and show cause "why monetary sanctions in the amount of $250.00 should not be imposed and/or why the Court should not strike [appellant's] pleadings for [her] failure to appear on January 24, 2024." The order to show cause in the clerk's transcript contains a clerk's certificate of service stating the order was served by mail on appellant on January 24, 2024.

### 8. *February 16, 2024*

On February 16, 2024, appellant filed an ex parte application to continue the trial to March 20. Her stated reason for the continuance was that she had an unspecified conflicting trial scheduled for February 13 through 23. Appellant also filed an "Exhibit List" that stated she "intends to submit the following exhibits into evidence at the time of Trial." However, our record does not show that any of the exhibits labeled A through H were included with the list.

The court's minute order for February 16 stated Husband was present for trial, appellant was not present, and a certified reporter was present. However, we lack a reporter's transcript of these proceedings. The minute order stated the court heard Husband's statements; the court denied appellant's request for a continuance "due to … non-appearance"; and the court deemed the trial concluded. The court took the case under submission, dismissed the order to show cause regarding sanctions against appellant, and took all other matters off calendar.

### *Request for Judicial Notice*

On March 11, 2024, appellant filed an "Ex Parte Request for Judicial Notice" in support of her trial brief that included approximately 163 pages. Specifically, she requested judicial notice of a writ of mandate she filed with the California Supreme Court contesting the court's December 2023 ruling permitting Husband to communicate with the lender to preserve the home. Various exhibits were attached to the writ, including a

8.

business loan application for Odessa, LLC and tax returns for the business. She also included documents she contends were relevant to adjudicating issues regarding the house. The court issued no ruling pertaining to her request.

*Decision and Judgment*

On March 15, 2024, the court issued its seven-page "DECISION AFTER TRIAL." After recounting the case's procedural history, the court set forth its factual findings and its rulings.

Regarding the family residence, the court found that it "was purchased during the marriage" in appellant's name; Husband claimed the property was titled in appellant's name "due to his poor credit and with no intention by the parties to have the property be considered [appellant's] separate property"; and appellant claimed it was titled in her name to be her separate property.

The court described the grant deed and the quitclaim deed as being recorded on September 9, 2015. The grant deed transferring title from the prior owners to appellant as "a married woman as her sole and separate property" was executed on June 20, 2015. Husband executed a quitclaim deed that conveyed his interest in the property to appellant as "a married woman as her sole and separate property," on September 2, 2015. The court found that "[t]he parties testimony regarding the down payment for the house and source of monthly payments was mixed and inconclusive." After reciting applicable law, the court made the following determination:

> "Based on the limited information provided by the Parties, the weight of the evidence supports that the intention of the Parties at the time of purchase was to place the subject property in the name of [appellant] as a matter of convenience and to serve the purpose of qualifying for a loan. It appears that [Husband] freely and voluntarily agreed to have the property titled in [appellant's] name and agreed to sign an interspousal transfer deed to [appellant]. However, based on the evidence presented it appears in all respects that the parties agreed that the property would eventually be transferred back into both names as community property and that the property would not lose its community property identity.

9.

Further, the weight of the evidence supports that [appellant] did not consider the property to be her sole and separate property until after divorce proceedings had commenced. [¶] The Residential Property shall be deemed a community property asset of the estate. [Appellant] may make an offer to [Husband] to purchase his community property interest in the home. If agreement cannot be reached the home will be ordered to be listed for sale and sold. Proceeds to be split equally between the parties subject to equalization payment."

The court made the other findings and rulings with respect to other marital property and obligations. It awarded to each party the "household furnishings, jewelry and personal belongings currently in their possession," which it "considered an equal distribution of these items" with "[n]o dollar amount" assigned. The court distributed the watch collection to Husband at a value of $11,070. The court distributed the two vehicles to appellant at a total value of $15,000. The court assigned "[n]o monetary value or distribution" to Odessa, LLC, stating that "[i]nsufficient evidence was provided that [Husband] maintained an ownership interest in said business or that the business had any value to the community estate." The court retained jurisdiction over various retirement accounts because insufficient evidence was presented as to these assets. The court assigned the "[p]ersonal debt obligations, mainly credit card debts … as stated on the record," and the "outstanding IRS date … jointly and severally between the parties." Finally, the court stated that it "retains jurisdiction over all assets and debts included and omitted from this ruling. The Court's Decision as to each item above shall be incorporated in the final judgment in this matter."

On March 28, 2024, prior to the entry of judgment, appellant filed a notice of appeal. On April 12, 2024, the court entered judgment in Husband's favor based on the court's decision after trial.[1]

---

[1] We exercise our discretion, in the interests of justice, to treat appellant's premature notice of appeal as filed immediately after the entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2).) Subsequent references to a numbered "Rule" are to the California Rules of Court, unless otherwise designated.

**DISCUSSION**

I.     DUE PROCESS AND JUDICIAL BIAS

Appellant argues her procedural due process rights were violated (1) by the trial court conducting the final day of trial in her absence and deeming the trial concluded and (2) by the court exhibiting judicial bias against her in various rulings and actions.

A.  *Standard of Review*

We review claims of procedural due process violations and judicial bias de novo. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589; *Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 82.)

B.  *Due Process*

As we understand Appellant's argument, she is challenging the trial court's sanction of proceeding without her and taking the case under submission due to her failure to appear at the February 16 trial date without cause.  That failure to appear violated the court's order to personally appear and show cause why it should not sanction her and "strike [her] pleadings for [her] failure to appear on January 24."

"[T]he imposition of sanctions always requires procedural due process," regardless of the legal basis underlying the sanctions order.  (*Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, 976 ["due process protections must be afforded in every situation in which the state deprives an individual of property"].)  This right to procedural due process is established by the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution and entitles a person to notice and the opportunity to be heard.  (*Caldwell*, *supra*, at p. 976; see *Kwan Software Engineering, Inc. v. Hennings, supra*, 58 Cal.App.5th at p. 82; see Code Civ. Proc., § 2023.030 [discovery sanctions may be imposed only after notice to the affected party and after opportunity for hearing].)  Here, the legal basis for the sanction was the trial court's inherent power to control litigation before it and the statutory power to "compel obedience to its judgment, orders and process[.]"  (Code Civ. Proc., § 128, subd. (a)(4);

11.

see *Guardianship of A.H.* (2022) 83 Cal.App.5th 155, 159–160 [a court's inherent authority includes dismissing a case as a sanction].)

Appellant had notice of the February 16 court date and the potential sanctions that could be awarded against her. The "Order to Show Cause Why Sanctions Should Not be Imposed" included in the clerk's transcript contains a clerk's certificate of service showing the order was served by mail on appellant on January 24, 2024. (See Evid. Code, § 641 ["letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail"].) The order directed appellant to appear and show cause "why monetary sanctions in the amount of $250.00 should not be imposed and/or why the Court should not strike [appellant's] pleadings for [her] failure to appear on January 24, 2024." The threatened sanction of striking appellant's pleadings equates to entering a default judgment on all issues, the most severe trial sanction. (Cf. *Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242 Cal.App.4th 1265, 1271 [courts have inherent authority to dismiss a case as a sanction, but this drastic remedy should be employed only in extreme situations]; see Code Civ. Proc., § 128, subd. (a)(4).) The lesser sanction eventually imposed by the trial court merely closed the case to additional evidence and took the case under submission. (See Civ. Code, § 3536 ["The greater contains the less."]; e.g., *Reynolds v. State Board of Equalization* (1946) 29 Cal.2d 137, 140 [authority to revoke or terminate a liquor license included the lesser penalty of suspending the license].)

Appellant argues her absence was or should have been excused because she filed an ex-parte written request for a continuance on the day of trial, February 16. This request was denied by the trial court "due to [her] non-appearance." By denying appellant's request for a continuance, the trial court impliedly found appellant's absence inexcusable. We review the trial court's denial of a trial continuance for abuse of discretion. (*Foster v. Civil Service Com.* (1983) 142 Cal.App.3d 444, 448.) The burden

12.

rests on the complaining party to demonstrate from the record that an abuse occurred. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

Rule 3.1332 governs motions and applications for trial continuances. Generally, "the dates assigned for a trial are firm. All parties and their counsel must regard the date for trial as certain." (Rule 3.1332(a).) A party must request a continuance "as soon as reasonably practical once the necessity for the continuance is discovered." (Rule 3.1332(b).) Rule 3.1332(c)–(d) lists factors to consider in granting a continuance. Because the record does not reflect the reasons for the court's denial of appellant's request for a continuance, we presume that the record supports the court's decision. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.)

Moreover, appellant's stated need for a continuance was a conflict with a trial that purportedly began three days before and that she estimated would end on February 23, 2024. (See Rule 3.1332(c)(2) ["the unavailability of a party because of … other excusable circumstances" may indicate good cause].) The court impliedly found that she did not make the request "as soon as reasonably practical" (Rule 3.1332(b)) given she knew of the other trial well before that.

Thus, the court could have reasonably concluded that appellant did not undertake a reasonable effort to request a continuance. Further, appellant provided no information about the other case set for trial, such as the court case number, location of the trial, the title of the case, or any other identifying information supporting the assertion that appellant was in fact involved in another trial.

The trial court could also consider other facts or circumstances (Rule 3.1332(d)(11)) like the need to resolve the dispute over the residence and other property. The court already determined that the residence, the marital estate's most valuable asset, was likely in danger of foreclosure. Only two months prior, the court authorized Husband to communicate with the lender even though he was not on title to ensure the home was not foreclosed upon. We see no reason to question the court's determination,

13.

in its discretion, that it needed to authorize Husband to ensure the home was not lost to foreclosure. Expeditiously resolving the issues surrounding the home would ensure the protection of the marital estate.

To summarize, the trial court's finding that appellant's absence at the February 16, 2024 trial date was inexcusable is supported by substantial evidence and is consistent with the applicable statute and rules of court. Thus, the court did not commit factual error, legal error, or otherwise abuse its discretion in (1) denying appellant's request to continue the February 16, 2024 trial and (2) proceeding with and concluding the trial in appellant's absence. (Code Civ. Proc., § 594; see generally, *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316 [three ways discretion can be abused].) Accordingly, appellant's right to procedural due process was not violated.

## C. *Judicial Bias*

Appellant also contends the trial court exhibited improper judicial bias. We thoroughly reviewed the record and those instances of purported bias appellant cites. We find no indication of bias.

Because appellant did not properly seek review of her claims of judicial bias under procedures provided by California law, her claims of bias are subject to the "exceptionally stringent standard" of the due process clause. (*Schmidt v. Superior Court, supra,* 44 Cal.App.5th at pp. 588–589 [failure to properly seek review of judicial bias under California law subjects claims of bias to the due process clause].) To meet this standard, appellant must show "a constitutional risk of actual bias or prejudgment requiring disqualification." (*Id*. at p. 589.)

"It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation. [Citation.] The appellate court's role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair, as opposed to a perfect, trial. [Citation.] Mere

14.

expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias. [Citation.] Numerous and continuous rulings against a party are not grounds for a finding of bias." (*Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 589.)

None of appellant's stated grounds for bias have merit. Appellant's arguments regarding the December 12 hearing, after which the trial court granted Husband the authority to intervene to ensure the house was not foreclosed upon lack merit. As we discuss below, the court properly determined that Husband has a community property interest in the house. Therefore, Husband had the right to ensure that the asset was not lost to foreclosure.

Appellant's claim that she properly conducted herself in court is unavailing. The trial court has the power "[t]o preserve and enforce order in its immediate presence." (Code Civ. Proc., § 128, subd. (a)(1).) "Disorderly … behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding" is conduct subject to contempt. (Code Civ. Proc., § 1209, subd. (a)(1).) Though the court did not hold appellant in contempt, the court had the authority to note appellant's behavior on the record and to control the orderly procedure of the hearing.

Further, we see nothing in the court's subsequent conduct indicating prejudicial bias against appellant. As discussed in part I.B. of this opinion, the court properly exercised its authority to close the evidence and take the case under submission in appellant's absence. The court in fact delayed the trial multiple times to afford appellant an opportunity to appear. Thus, appellant's claims regarding her requests for continuances fail.

With respect to the court's failure to rule on and consider the evidence submitted with appellant's request for judicial notice, even if the court should have ruled on the request and even granted it, the court could not consider the contents of the documents appellant submitted as evidence relevant to disputed issues of fact. (See pt. II.B., *post*.)

15.

We also find no bias in the trial court taking appellant's motions to compel off calendar. The court gave appellant multiple opportunities to argue her motions to compel. Because the court concluded the trial, thus the attendant proceedings, there was no reason to keep appellant's motions on calendar.

Further, it appears that the trial court found, at an October 20, 2022 hearing, that appellant's motions to compel responses to her form interrogatories and the production of documents were "improperly filed." No transcript of that hearing or written decision informs us of the court's reasoning. However, appellant does not explain or challenge the court's finding. The court also noted in its March 2, 2023 minute order that "[Husband] has the documents requested by [appellant] in Motions to Compel. The documents will be lodged with the Court pending the next hearing." Appellant does not contend on appeal that Husband did not comply with her request for production of documents, mooting the motion to compel.

In addition, we find no bias in the trial court's failure to rule on appellant's motion to set aside the court's December 12, 2023 ruling under Federal Rules of Civil Procedure, rule 60.[2] The Federal Rules of Civil Procedure, applicable to actions filed in the federal district courts, do not by their terms apply to actions filed and pursued in state courts. (Fed. Rules of Civ. Proc., rule 1; *Bach v. County of Butte* (1983) 147 Cal.App.3d 554,

---

[2] That rule pertains to relief from a judgment or order. It states as grounds for relief from an order "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." (Fed. Rules of Civ. Proc., rule 60, subd. (b).)

16.

562, fn. 4.) Sections 473[3] and 1008[4] of the California Code of Civil Procedure mirror, in part, relevant portions of this federal rule. If appellant's motion is construed as being made under either section of California's Code of Civil Procedure, it is deficient because it did not attempt to show "mistake, inadvertence, surprise, or excusable neglect" (Code Civ. Proc., § 473, subd. (b)) or "new or different facts, circumstances, or law." (Code Civ. Proc., § 1008, subd. (a).) Rather, her motion merely argued the merits of the dispute over the characterization of the house, *not* the court's exercise of its power to protect an asset of the marital estate. (See, e.g., *Rosenthal v. Rosenthal* (1966) 240 Cal.App.2d 927, 933 ["[i]f jointly-owned property is in danger of being lost or destroyed or misappropriated, the trial court may appoint a receiver to protect a party's interest in the property, and such an appointment will be upheld on appeal"].) Consequently, appellant brought her motion under the wrong authority and failed to make arguments addressing the standards California has adopted for such a motion. Therefore, even if the court should have ruled on the motion, we do not find bias because the motion set forth no grounds upon which relief could be granted.

Appellant's other motion — to divide the Odessa, LLC business as a community asset — was, in effect, a trial brief on an issue addressed in the judgment after trial. We presume the court considered appellant's arguments before ruling there was insufficient evidence to show that Husband maintained an ownership interest in the business or that the business had any value to the community estate. As stated below, we conclude the court did not err in its ruling (see pt. II.C.2., *post*), and we find no indication of bias with respect to that ruling.

---

[3]     Relevant here, the court may grant relief from an order based on the moving party's "mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., § 473, subd. (b).)

[4]     "[N]ew or different facts, circumstances, or law" are among the grounds for a motion to reconsider or modify a prior order. (Code Civ. Proc., § 1008, subd. (a).)

17.

In sum, we conclude appellant's arguments regarding judicial bias lack merit.

## II.     MARITAL ESTATE ISSUES

### A. _Standard of Review and General Legal Principles_

"On appeal, we presume the judgment is correct. ' "All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown" ' by the appellant." (_In re Marriage Ciprari_ (2019) 32 Cal.App.5th 83, 93–94.) Put differently, the appellant bears the burden to present us with an adequate record, and, where we lack a reporter's transcript necessary for our review, we presume the unreported trial testimony supports the court's findings. (_Trinity v. Life Insurance Co. of North America_ (2022) 78 Cal.App.5th 1111, 1124, fn. 4; _Shenefield v. Shenefield_ (2022) 75 Cal.App.5th 619, 633, fn. 12; _Estate of Fain_ (1999) 75 Cal.App.4th 973, 992.)

In the absence of an agreement, a family court, during a marital dissolution, must determine the assets and liabilities of the community estate. (_In re Marriage of Finby_ (2013) 222 Cal.App.4th 977, 984.) The family court must then value and equally divide the parties' property estate. (Fam. Code, § 2550; _Sass v. Cohen_ (2020) 10 Cal.5th 861, 885.) The family court distributes both the assets and the obligations of the estate so that the net assets awarded to each party after the deduction of the obligations are equal. (_In re Marriage of Walrath_ (1998) 17 Cal.4th 907, 924.)

With respect to the characterization of property, a family court's factual findings regarding the existence of the parties' property are reviewed under the substantial evidence standard. (_In re Marriage of Ettefagh_ (2007) 150 Cal.App.4th 1578, 1584.) "In general, '[a]ppellate review of a trial court's finding that a particular item is separate or community property is limited to a determination of whether any substantial evidence supports the finding.' " (_In re Marriage of Bonvino_ (2015) 241 Cal.App.4th 1411, 1421.) "In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary

18.

conflicts.' The determinations should be 'upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' " (*In re Caden C*. (2021) 11 Cal.5th 614, 640.) Substantial evidence refers to evidence that is legally ponderable and thus, reasonable, credible, and of solid value. (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 24, fn. 21.)

With respect to the distribution of the marital estate, the family court has broad discretion to determine how the community estate is divided, although the estate must be divided equally in the absence of an agreement. (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 313.) The family court's division of the community estate, including issues concerning the valuation and apportionment of community property, are reviewed under the abuse of discretion standard. (*Ibid.*; *In re Marriage of Finby*, *supra*, 222 Cal.App.4th at p. 984.) A family court abuses its discretion when its decision exceeds the bounds of reason under all the circumstances present. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598; *Marriage of Oliverez*, *supra*, at p. 313.)

B. *Judicial Notice*

Before we speak to the issues regarding the marital estate, we address appellant's posttrial, prejudgment request for judicial notice. Appellant argues the court should have (1) granted the request for judicial notice and (2) considered those documents as evidence in adjudicating various disputed issues regarding the marital estate.

On March 11, 2024, after the case was taken under submission, and before judgment was entered, appellant filed a "Request for Judicial Notice" of a writ of mandate she filed with the California Supreme Court contesting the court's December 2023 ruling permitting Husband to communicate with the lender to preserve the home. Her filing included various documents, such as a business loan application for Odessa, LLC and tax returns for the business, she contends show a community property interest in

19.

the business.  She also included documents she contends were relevant to adjudicating issues surrounding the residence.

As an initial matter, the trial court's February 16, 2024 minute order deeming trial complete did not render it so.  "[T]rial is not complete but is still in process of determination" until a final judgment is issued, and "[u]ntil that time, the trier of the fact may change his mind."  (*Reimer v. Firpo* (1949) 94 Cal.App.2d 798, 800.)  Even when "an order has been made directing the entry of judgment, [a court] may order a different judgment to be entered."  (*Ibid*.)

Insofar as evidence was closed and the cause deemed submitted when appellant filed her request for judicial notice, her request *could* have been construed as a motion to reopen the case for further evidence, which we ordinarily review for abuse of discretion.  (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 208; *Howard v. Contracting, Inc. v. G.A.* (1998) 71 Cal.App.4th 38, 59.)  However, the trial court did not rule on appellant's request, and a failure to exercise discretion when called upon to do so can be an abuse of discretion.  (*Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176.)

Despite the trial court's failure to exercise its discretion, appellant still bears the burden on appeal to demonstrate prejudice, i.e., a reasonable probability she would receive a more favorable result absent the error.  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 162; *Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 72 [appellants must demonstrate both the presence of error and the prejudicial effect of that error].)  We conclude appellant cannot establish prejudice.

"Judicial notice may not be taken of any matter unless authorized or required by law."  (Evid. Code, § 450.)  Evidence Code sections 451 and 452 list matters subject to judicial notice.  Appellant framed her request for judicial notice under Evidence Code

20.

section 452, which gives the court *discretion*, but does not mandate the court, to grant judicial notice.[5]

Appellant does not argue that the trial court should have decided to grant her request under Evidence Code section 452, but for purposes of this appeal we assume it should have done so. "Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374; see also *StorMedia, Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9.) The truth of statements contained in the document and its property interpretation are not subject to judicial notice if those matters are reasonably disputable. (*StorMedia, Inc. v. Superior Court*, *supra*, at p. 457, fn. 9; *Barri v. Workers' Comp. Appeals Bd*. (2018) 28 Cal.App.5th 428, 437 [it is "improper to rely on judicially noticed documents to prove disputed facts because judicial notice, by definition, applies solely to undisputed facts"].)

For example, "the fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein." (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117.) Nor was it appropriate for a court to judicially notice the value of certain stocks because an "appendix" to an accounting appearing in an Arizona court file stated the stocks had a value "of at least the amounts set forth in" the appendix. (*Day v. Sharp* (1975) 50 Cal.App.3d 904, 913–916 (*Day*).) Here, even if the trial court should have granted appellant's request for judicial notice, the court could not consider the contents of the documents as proof of disputed facts, i.e., the characterization of the

---

[5] Our review shows that none of the documents, except the grant deed and quitclaim deed, for which judicial notice was requested qualify for Evidence Code section 451's mandatory judicial notice. Recorded deeds, as official records of a county, are properly subject to judicial notice. (See Evid. Code, § 452, subd. (c) ["Official acts of the … executive … department [ ] … of any state"]; *Marek v. Napa Community Redevelopment Agency* (1988) 46 Cal.3d 1070, 1076, fn. 5.)

house, apart from the fact that appellant's name was on title, and any interest in or the value of the Odessa business.

Further, these documents contain hearsay. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at a hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Hearsay evidence is inadmissible. (Evid. Code, § 1200, subd. (b).) Judicial notice does not extend to hearsay in documents. (*In re Vicks* (2013) 56 Cal.4th 274, 314.)

Here, the relevant portions of the documents appellant requested the trial court rely upon include, for example, entries by a third party in a tax return regarding Odessa's financial information for that year. That is an out-of-court, unsworn witness's written statement representing value, which appellant offers to prove the truth of a matter: the value of the Odessa business. It is inadmissible. The same issues plague appellant's use of the other documents contained in the request for judicial notice.

We conclude that even if the trial court should have ruled on the request for judicial notice, there exists no reasonable probability that the court would have granted appellant's request. Even if the court judicially noticed the documents, the court could not consider the contents of those documents as evidence pertaining to disputed factual issues surrounding the house, Odessa, or any other matter in controversy, except for the recorded deeds related to the house. The trial court's analysis of the deeds is discussed below. (See pt. II.C.1., *post.*) Therefore, appellant has not demonstrated prejudice.

C. *Characterization and Distribution of Real Property*

Appellant argues the trial court erred by either mischaracterizing or improperly distributing various estate assets or obligations. We consider each asset or obligation in turn.

1. *The Residence*

Generally, we presume "all property … acquired by a married person during the marriage … is community property." (Fam. Code, § 760; *In re Marriage of Valli* (2014)

58 Cal.4th 1396, 1408–1409 (conc. opn. Chin, J.) (*Valli*) ["[t]he presumption, … that property acquired during the marriage is community, is perhaps the most fundamental principle of California's community property law"].)  But the character of marital property may be changed by "transmutation," i.e., an agreement or transfer.  (Fam. Code, § 850, subd. (a).)  A valid transmutation must be "made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."  (Fam. Code, § 852, subd. (a); see *id*. subd. (e).)

A valid transmutation requires three elements obtain:  "(1) the transmutation must be made in writing; (2) the writing must contain an 'express declaration' of transmutation; and (3) the writing must be 'made, joined in, consented to, or accepted' by the adversely affected spouse."  (*In re Marriage of Kushesh & Kushehs-Kaviani* (2018) 27 Cal.App.5th 449, 454.)  The "express declaration" requirement means the writing must contain "language which expressly states that the characterization or ownership of the property is being changed."  (*Estate of MacDonald* (1990) 51 Cal.3d 262, 264; *In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1107; see also, *In re Brace* (2020) 9 Cal.5th 903, 938 [citing *MacDonald* with approval and finding joint tenancy deed by itself insufficient to establish transmutation].)

Generally, in deciding whether a transmutation has occurred, we interpret the written instruments independently, without resort to extrinsic evidence.  (*Estate of MacDonald*, *supra*, 51 Cal.3d 262, 271–272.)  We presume the grant deed and quitclaim deeds contained in appellant's request for judicial notice are the same deeds the court considered.  The grant deed transferred title from the sellers to appellant as "a married woman as her sole and separate property."  The quitclaim deed transferred Husband's "interest in the subject property to Samreen Riaz, a married woman as her sole and separate property."

This language was sufficient to show a transmutation.  A grant deed is, by definition, an express declaration of a transfer of interest in real property.  (See *Estate of*

23.

*Bibb* (2001) 87 Cal.App.4th 461, 463 [grant deed transferring husband's separate property interest in real property to wife as joint tenants satisfies "express declaration" requirement since it contained a clear, unambiguous expression of intent to transfer the real property interest].)  It need not contain words like "transmutation," "community property" or "separate property" to constitute a transmutation so long as language exists effecting a change in the property's ownership.  (*Estate of MacDonald, supra,* 51 Cal.3d 262, 272–273.)

Next, we consider whether other circumstances establish transmutation did not occurred in this case.  Family Code section 721 imposes upon property-related transactions between spouses " 'a duty of the highest good faith and fair dealing on each spouse." (Fam. Code, § 721, subd. (b).)  "This duty stems from the 'general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other,' prohibiting each spouse from taking 'any unfair advantage of the other.'  [Citation.]  Thus, ' "[i]f one spouse secures an advantage from the transaction, a statutory presumption arises under [Family Code section 721] that the advantaged spouse exercised undue influence and the transaction will be set aside." ' " (*Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1353.)  Where it arises, this presumption prevails over the presumption in favor of record title.  (*In re Marriage of Delaney* (2003) 111 Cal.App.4th 991, 997–998.)

An advantage results to one spouse "when the 'spouse's position is improved, he or she obtains a favorable opportunity, or otherwise gains, benefits, or profits. [Citation.]' (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 629.)  The presumption is rebuttable; the spouse advantaged by the transaction must establish that the disadvantaged spouse acted freely and voluntarily, with ' " ' "full knowledge of all the facts, and with a complete understanding of the effect of" the transaction.' " ' " (*Lintz v. Lintz*, *supra*, 222 Cal.App.4th at p. 1353.)  The advantaged spouse must rebut the presumption by a preponderance of the evidence.  (*In re Marriage of Fossum* (2011) 192

Cal.App.4th 336, 344.) Whether the advantaged spouse overcame this presumption is a question for the trier of fact we affirm if supported by substantial evidence. (*Ibid.*)

The presumption of undue influence is frequently applied where one spouse deeds a single piece of property to the other without consideration. (See, e.g., *In re Marriage of Mathews*, *supra*, 133 Cal.App.4th 624; *In re Marriage of Delaney*, *supra*, 111 Cal.App.4th 991.) In such cases, "it is evident one spouse has obtained an advantage — the deeded property — from the other." (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 730.) Here, it is clear the presumption applies: appellant received the house as her sole, separate property, and our record does not disclose that Husband received any reciprocal benefit.

In this case, appellant argues she rebutted this presumption and, alternatively, argues the trial court committed legal error by not relying on the presumption of ownership based on record title. Generally, "the owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." (Evid. Code, § 662.) Thus, appellant argues, because appellant's name was on record title, Husband bore the burden to rebut the presumption of her ownership by clear and convincing evidence. We disagree.

Evidence Code section 662's presumption and its higher standard of proof does not apply when a transmutation that unfairly advantages one spouse is challenged by the disadvantaged spouse. (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 301–302 [disagreed with on other grounds by *In re Brace*, *supra*, 9 Cal.5th 903, 916]; *In re Marriage of Delaney*, *supra*, 111 Cal.App.4th at pp. 997–998 & fn. 6.) The presumption of undue influence (Fam. Code, § 721, subd. (b)) "cannot come into play if [Evidence Code section 662] is applied because the higher evidentiary standard of [Evidence Code section 662]. Therefore, application of [Evidence Code section 662] in such situations can significantly weaken protections the Legislature intended to provide for spouses who are taken advantage of in interspousal transactions." (*Haines*, *supra*, at p. 301.)

25.

For example, in *Valli*, our Supreme Court addressed a case where a husband used community funds during marriage to buy a life insurance policy that named his wife as the policy's sole owner and beneficiary. (*Valli*, *supra*, 58 Cal.4th at p. 1399.) Upon dissolution of the marriage, husband argued that "the policy is community property because it was purchased during the marriage with community funds," while the wife argued that "the policy is her separate property because husband arranged for the policy to be put solely in her name, thereby changing the policy's character from community property to separate property." (*Id*. at p. 1400.)

The Supreme Court "first held that the statutory transmutation requirements apply not only to interspousal transactions, but also to 'purchases made by one or both spouses from a third party during the marriage' using community funds." (*In re Brace*, *supra*, 9 Cal.5th at p. 915 [summarizing *Valli*].) It "then held that to the extent that 'Evidence Code section 662's form of title presumption ever applies in marital dissolution proceedings,' 'it does not apply when it conflicts with the transmutation statutes.' " (*Ibid*.) "In other words, the community character of the insurance policy could not be altered except by 'an express written declaration' by the husband that 'he gave up his community interest in the policy bought with community funds,' as required by the transmutation statute." (*Ibid*.) "The fact that the insurance policy was put in the wife's name was not 'sufficient to satisfy the express declaration requirement'; thus, the policy was community property." (*Ibid*.)

*In re Brace* addressed the dispute between these competing presumptions in the bankruptcy context. The property was acquired by a married couple during the marriage and the held title as joint tenants. (*In re Brace*, *supra*, 9 Cal.5th at p. 911.) Our Supreme Court concluded the act of taking title as joint tenants is "insufficient to prove a transmutation; however, a court may consider the manner of taking title in determining whether the spouses had an oral agreement or common understanding." (*Id*. at p. 912.) The court commented on the conflict between Evidence Code section 662 and Family

Code section 760: "Evidence Code section 662 does not reference the Family Code, nor does it explicitly characterize property as separate so as to provide an exception to Family Code section 760." (*In re Brace*, *supra*, at p. 915.) It "is not a separate property exception to Family Code section 760 …." (*Ibid.*)

Based on these authorities, we conclude Evidence Code section 662's presumption of ownership based on record title did not apply because the presumption of undue influence arose with respect to the interspousal title transfer involving the house. Substantial evidence supports finding that appellant failed to rebut the presumption of undue influence. Believing the transaction to have been for purposes of obtaining a purchase mortgage, Husband did not understand his execution of the quitclaim deed as effectuating a permanent transmutation of the house's character into appellant's sole, separate property. The trial court, as the trier of fact, impliedly found Husband was credible when Husband testified he did not understand the effect of the quitclaim deed's execution as effectuating a transmutation. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of a single witness, even a party in a dissolution proceeding, may constitute substantial evidence].)

Appellant disagrees. She claims she rebutted the presumption of undue influence with various testimony before the court, and that Husband's testimony was insufficient. She relies on purported trial testimony from a "motion hearing from 2023" apparently under Rule 8.486(b)(3)(A), which states in relevant part that, if a reporter's transcript is unavailable, the record must include a declaration "[e]xplaining why the transcript is unavailable and fairly summarizing the proceedings…." This rule falls under Chapter 7 of the California Rules of Court pertaining to "Writs of Mandate, Certiorari, and Prohibition in the Supreme Court and Court of Appeal."

This procedure is inapplicable because this case comes to us on appeal, not via writ. Rather, Rule 8.120(b) provides that "[i]f an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal

27.

must include a record of these oral proceedings." Most commonly, a reporter's transcript serves as such a record, but the rule also provides other options, such as an agreed statement under Rule 8.134,[6] or a settled statement under Rule 8.137.[7] (Rule 8.120(b).)

When an appellant completes the notice designating the record on appeal, the notice must specify whether the appellant elects to proceed with or without a record of the oral proceedings in the trial court. (Rule 8.121(b)(1)(C).) If the appellant elects to proceed with such a record, the notice must specify which form of the record listed in Rule 8.120(b) the appellant elects to use, whether a reporter's transcript, agreed statement, or settled statement. (Rule 8.121(b)(1)(C).)

Appellant's notice designating the record on appeal did not designate a reporter's transcript, an agreed statement, or a settled statement.[8] By electing no form of record of court hearings or oral proceedings, she acknowledged, as stated on the form, that "without a record of the oral proceedings in the superior court, the Court of Appeal will not be able to consider what was said during those proceedings in deciding whether an error was made in the superior court proceedings."

Many of appellant's arguments are based on oral testimony or other evidence offered at trial hearings for we have not record of the oral proceedings. For example, we lack a transcript of the August 13, 2023 trial proceedings where the court apparently heard further testimony regarding the house. Lacking a transcript, we must presume this

---

[6] An agreed statement "explain[s] the nature of the action, the basis of the reviewing court's jurisdiction, and how the superior court decided the points to be raised on appeal. The statement should recite only those facts needed to decide the appeal and must be signed by the parties." (Rule 8.134(a)(1).)

[7] "A settled statement is a summary of the superior court proceedings approved by the superior court." (Rule 8.137(a).) An appellant's proposed settled statement must contain a statement of the points the appellant is raising on appeal and a condensed narrative of the oral proceedings at issue. (Rule 8.137(d)(1) & (d)(2)(A).)

[8] Three reporter's transcripts, which were summarized earlier, became part of the record when we granted appellant's motion to augment the record. (Rule 8.155(a).)

28.

testimony supported the court's decision.  (*Trinity v. Life Insurance Co. of North America*, *supra*, 78 Cal.App.5th at p. 1124, fn. 4; *Shenefield v. Shenefield*, *supra*, 75 Cal.App.5th at p. 633, fn. 12; *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.)

Further, though appellant testified that the parties understood the transfer to be for her benefit alone, the court, as the trier of fact, was not obligated to accept her testimony. (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175 [appellate courts do not reweigh or reconsider credibility determinations].)  Conflicting evidence, even by the same witness, does not preclude a finding of substantial evidence.  (*People v. White* (2014) 230 Cal.App.4th 305, 319, fn. 14 ["the testimony of a witness is ordinarily sufficient to uphold a judgment 'even if it is contradicted by other evidence, inconsistent or false as to other portions' "]; see *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67 ["the trier of fact may accept part of the testimony of a witness and reject another part even though the latter contradicts the part accepted"].)  "Moreover, neither conflicts in the evidence nor ' "testimony which is subject to justifiable suspicion … justif[ies] the reversal of a judgment." ' " (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065.)  Rather, testimony believed by the trial court "may be rejected only when it is inherently improbable or incredible, i.e., ' "unbelievable *per se*," ' physically impossible or ' "wholly unacceptable to reasonable minds." ' " (*Ibid.*; *People v. White*, *supra*, at p. 319, fn. 14 ["[t]he circumstances in which an appellate court may properly decline to credit testimony are exceptional and rare"].)

Accordingly, appellant's argument that the trial court should have accorded greater deference to her testimony, or that it should have found Husband's testimony lacking credibility, are unavailing.  We find nothing in the portions of Husband's testimony available to us that is so improbable, incredible, or unacceptable compelling us to exercise our exceptional, rare authority to decline to credit that testimony.

We conclude substantial evidence supported the court's finding that Husband did not understand his consent to the transfer as effectuating a change in the character of the

marital property for appellant's sole benefit. Rather, he understood his consent as limited to a transfer for purposes of obtaining a mortgage to obtain a community property asset. Thus, the court could reasonably determine appellant did not meet her burden to rebut the presumption of undue influence. Her failure to do so means no transmutation occurred, and the home is presumed community property as acquired during the marriage. (Fam. Code, § 760.)

2. *Odessa Business*

Appellant argues the trial court erred by not equally dividing Husband's interest in a business called "Odessa." The trial court determined that it could assign no monetary value to or distribute any interest in the business because "[i]nsufficient evidence was provided that [Husband] maintained an ownership interest in said business or that the business had any value to the community estate."

Reviewing the trial court's determination for substantial evidence (*In re Marriage of Bonvino*, *supra*, 241 Cal.App.4th at p. 1421), we uphold the court's determination. The minute order for September 15, 2023, shows the trial court received some testimony regarding Odessa that day. Because appellant did not provide a transcript of the proceedings, she cannot carry her burden and overcome the presumption that the trial court's decision was correct. (*Trinity v. Life Insurance Co. of North America*, *supra*, 78 Cal.App.5th at p. 1124, fn. 4; *Shenefield v. Shenefield*, *supra*, 75 Cal.App.5th at p. 633, fn. 12; *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.)

Further, as discussed in part II.B. of this opinion, appellant's request for judicial notice did not contain any evidence admissible through judicial notice that the court could have used to determine either an interest in the business or an assigned value for purposes of distribution. Therefore, we must conclude that the trial court's decision regarding the Odessa business was supported by substantial evidence.

*3. Watch Collection*

Appellant contends the trial court erred by (1) finding the value of the watch collection was $11,070 and (2) distributing the value of that collection to Husband.

First, we consider whether the court abused its discretion in valuing the watch collection at $11,070. The court and appellant apparently received from Husband an inventory of watches in Husband's possession, which is not in our record, that showed a value of $11,070. At the May 4, 2023 trial, appellant agreed to this amount. After hearing conflicting testimony regarding the value of the watch collection, the court suggested that it value the collection at "$11,070, and divide [it] in half, where [appellant is] entitled to half of that, and [Husband is] entitled to the other half." Appellant replied, "That's fine." The court indicated that appellant could introduce other evidence challenging that amount until the court rendered judgment. Nothing in our record shows appellant introduced any evidence challenging the valuation of the collection.

A factual stipulation "is conclusive upon the parties, and the truth of the facts contained therein cannot be contradicted." (*Palmer v. City of Long Beach* (1984) 33 Cal.2d 134, 141–142; *Palmer v. City of Anaheim* (2023) 90 Cal.App.5th 718, 723.) Her stipulation is *evidence*. (See CACI No. 106 [where facts are stipulated to "[n]o other proof is needed …"].) Insofar as appellant purports to challenge this stipulation on appeal, she forfeited this argument by failing to object below. (*Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013 [" '[f]ailure to raise specific challenges in the trial court forfeits the claim on appeal' "]; *Palmer v. City of Anaheim*, *supra*, 90 Cal.App.5th at p. 723 [trial court has discretion to relieve a party from a stipulation].) Thus, appellant cannot argue now that the court erred in valuing the watch collection at $11,070.

Second, we consider whether the court erred in ultimately distributing the entire watch collection to Husband. Appellant does not present reasoned argument showing that this decision was an abuse of discretion. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708 [burden falls on appellant to demonstrate error]; *People*

31.

*v. Sorden* (2021) 65 Cal.App.5th 582, 603 ["failure to present reasoned argument and legal authorities in support" of a claim of error forfeits issue on appeal].) The relevant inquiry is not whether the court evenly divides *each asset* but rather whether the court fairly divides the estate *as a whole*. (*In re Marriage of Oliverez*, *supra*, 33 Cal.App.5th at p. 313.) Appellant does not argue that the division of the estate was unfair, only that the court should have divided the watches between them. We note some assets of the estate were distributed only to appellant. For example, the two vehicles valued at $15,000 were distributed by the court to appellant. Appellant does not explain how this apportionment of the vehicles, watches and other assets represented an unreasonably unfair division of the estate, nor does it appear to us that such a division was an abuse of the court's discretion.

### 4. Debts

Appellant argues the trial court erred when it failed to divide various credit card and other debt equally. The court's decision stated that "[p]ersonal debt obligations, mainly credit card debts, are assigned as stated on the record," but that "[t]he outstanding IRS [debt] shall be paid jointly and severally between the parties." Given the IRS debt was divided evenly between the parties, we address only the personal debt.

At the May 4, 2023 trial, the parties stipulated to various amounts of personal debt obligations. The court retained jurisdiction over other obligations. Insofar as other obligations were addressed at other hearings, we lack the necessary reporter's transcript for appropriate review; thus, we presume the unreported testimony supports the court's findings. (*Trinity v. Life Insurance Co. of North America, supra,* 78 Cal.App.5th at p. 1124, fn. 4; *Shenefield v. Shenefield, supra,* 75 Cal.App.5th at p. 633, fn. 12; *Estate of Fain, supra,* 75 Cal.App.4th at p. 992.) To the extent the parties stipulated to the amount and distribution of each obligation, those stipulations are binding. (*Palmer v. City of Long Beach*, *supra*, 33 Cal.2d at pp. 141–142; *Palmer v. City of Anaheim*, *supra*, 90 Cal.App.5th at p. 723.) According to our record, she did not challenge these stipulations

32.

below, forfeiting any such challenge on appeal. (*Quiles v. Parent, supra*, 28 Cal.App.5th at p. 1013 [" '[f]ailure to raise specific challenges in the trial court forfeits the claim on appeal' "]; *Palmer v. City of Anaheim, supra*, at p. 723 [trial court has discretion to relieve a party from a stipulation].) Thus, appellant cannot now complain about the amount and division of these obligations.

Further, we lack any indication in the record, and appellant does not explain, how the trial court intended to divide the personal obligations. At the May 4, 2023 hearing, the court mentioned entering the obligations into the "Propertizer, to make sure that there's a fair and equal distribution of the marital estate." " 'Propertizer' is commercial software that divides community assets and debts." (*Welch v. Welch* (2022) 79 Cal.App.5th 283, 291, fn. 5.) Our record lacks any balance sheet, whether from Propertizer or another source, indicating how the community assets and debts were divided. Thus, the court might not have issued an itemized distribution or, alternatively, might have issued one but it is absent from our record.

If the former, then the court retained jurisdiction to issue a final distribution later. In that case, appellant's argument is premature: no distribution has yet been made. If the latter, appellant has failed to provide us with an adequate record to assess whether the court erred. An appellant's failure to furnish an adequate record requires the challenged order be upheld. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348; *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.) We conclude appellant has failed to show the trial court erred in any distribution of the personal debts.

## DISPOSITION

The judgment is affirmed.  In the interests of justice, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                                                        FRANSON, J.

WE CONCUR:


LEVY, Acting P. J.


SMITH, J.